**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

* * *

JAMIE STANLEY, an individual and on behalf of similarly situated persons,

Plaintiffs,

v.

SUBCONTRACTING CONCEPTS CT LLC, a Delaware limited liability company; PRINCIPAL DISTRIBUTION ARIZONA LLC, a Texas limited liability company; PRINCIPLE DISTRIBUTION LLC, a Texas limited liability company; DOES 1 to 1000 and ROE entities I to L,

Defendants.

Case No. 2:25-cv-01958-RFB-NJK

**ORDER**

Before the Court is Defendants' Motion to Stay and Compel Arbitration (ECF No. 10). Defendants Subcontracting Concepts CT LLC and Subcontracting Concept, LLC (collectively, "SCI"), Principle Distribution Arizona LLC and Principle Distribution LLC (collectively, "Principle") seek to send Plaintiff Jamie Stanley's case to arbitration. Also before the Court is Plaintiff's Motion for Leave to File Surreply (ECF No. 17). For the following reasons, the Court denies Plaintiff leave to file and denies Defendants' motion to compel arbitration without prejudice.

## I. PROCEDURAL HISTORY

On October 13, 2025, Plaintiff Jamie Stanley initiated this action by filing a complaint against Defendants SCI and Principle. See ECF Nos. 1, 4. On November 16, 2025, Defendants filed the instant Motion to Compel Arbitration. See ECF No. 10. The Court heard argument on the motion on April 7, 2026. See ECF No. 30. On September 18, 2026, given intervening Supreme

Court law, the Court ordered the Parties to file supplemental briefs. See ECF No. 32. The Court's Order on the motion to compel arbitration and motion for leave to file surreply follows.

## II. FACTUAL ALLEGATIONS

This action arises from Defendants' alleged failure to pay overtime wages. Plaintiff alleges causes of action under the Fair Labor Standards Act, 29 U.S.C. § 207, and Nevada state law, NRS § 608, *et seq.*

On September 28, 2023, Plaintiff signed a "Broker & Contractor Negotiated Rate & Arbitration Agreements" with Principle (the "Principle Agreement").[1] On April 16, 2024, Plaintiff signed a "Owner/Operator Agreement" with SCI (the "SCI Agreement").[2] Principle is a "Logistics Broker client" of SCI.[3] During Plaintiff's employment with Defendants, from September 2023 to July 2025, Plaintiff performed "last-mile" auto-parts delivery services for and on behalf of various third parties that contracted with Defendants.[4] Plaintiff alleges that, throughout the course of his employment, he worked an average of five hours overtime weekly but did not receive any overtime wages.[5] Defendants hereby move to send Plaintiff's claims to arbitration, citing an Arbitration Clause in the SCI Agreement.[6]

## III. LEGAL STANDARD

The Federal Arbitration Act ("FAA") generally provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The FAA contains several enforcement mechanisms for private parties to compel arbitration pursuant to a valid arbitration agreement, but exempts certain contracts from its scope, specifically the employment contracts of "seamen, railroad employees, [and] any other class of workers engaged in foreign or interstate commerce." 9 U.S.C. § 1; Circuit City Stores, Inc. v. Adams, 532 U.S. 105, 118–19 (2001). To stay proceedings or compel

[1] See ECF No. 10-2 [hereinafter, "Principle Agreement"].
[2] See ECF No. 10-1 [hereinafter, "SCI Agreement"].
[3] See Mot. to Compel Arb. at 3, ECF No. 10 (November 26, 2025) [hereinafter, "Mot. to Compel Arb."]
[4] See Complaint ¶¶ 122–56, ECF No. 4 (October 14, 2025) [hereinafter, "Complaint"]; Plaintiff's Opposition to Motion to Compel Arbitration at 5, ECF No. 14 (December 10, 2025) [hereinafter, "Opp'n"].
[5] See Complaint ¶¶ 159–60.
[6] See SCI Agreement at 6.

arbitration under the FAA, a district court must first determine whether an agreement falls "within or beyond the boundaries of §§ 1 and 2." In re Orr, 178 F.4th 525, 533 (9th Cir. 2026) (quoting New Prime Inc. v. Oliveira, 586 U.S. 105, 111 (2019).

Because the FAA mandates that "district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed[,]" a court's involvement is "limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000) (internal quotation marks omitted). The party seeking to compel arbitration has the burden to show that both of these questions must be answered in the affirmative. See Nguyen v. Barnes and Noble, Inc., 763 F.3d 1171, 1175 (9th Cir. 2014); Ashbey v. Archstone Prop. Mgmt., Inc., 785 F.3d 1320, 1323 (9th Cir. 2015). "If the answer is yes to both questions, the court must enforce the agreement." Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1012 (9th Cir. 2004). Section 3 of the FAA provides for a stay of legal proceedings whenever the issues in a case are within the reach of an arbitration agreement. 9 U.S.C. § 3. A request for a stay is not mandatory. See Martin Marietta Aluminum, Inc. v. Gen. Elec. Co., 586 F.2d 143, 147 (9th Cir. 1978).

However, even if a district court is not bound by the FAA, "[i]t does not follow . . . that the arbitration clause is unenforceable. Chappel v. Lab'y Corp. of Am., 232 F.3d 719, 725 (9th Cir. 2000). Rather, "[w]hile the distinctive procedural apparatus and presumption of arbitrability of the FAA would fall away," Plaintiff may "still be required under the law of contract to arbitrate in accordance with the clause." Id.

## IV. DISCUSSION

### A. Motion to Compel Arbitration – SCI

At the outset, the Court decides whether § 1 of the FAA—the "contracts of employment" exclusion—applies. In re Orr, 178 F.4th at 533 (quoting New Prime Inc. v. Oliveira, 586 U.S. 105, 111 (2019). As the party opposing arbitration, Plaintiff bears the burden of establishing that the exemption applies. See Fli-Lo Falcon, LLC v. Amazon.com, Inc., 97 F.4th 1190, 1194 (9th Cir.

2024).

The Supreme Court has utilized a two-step framework to answer this inquiry, determining first, the relevant "class of workers" to which Plaintiff belongs; and second, whether that class of workers "engaged in foreign or interstate commerce." Southwest Airlines Co. v. Saxon, 596 U.S. 450, 455 (2022). Plaintiff, through his contract with Defendants, performed last-mile delivery services that qualify him as a transportation worker engaged in the movement of goods in interstate commerce. See Rittmann v. Amazon.com, Inc., 971 F.3d 904, 915 (9th Cir. 2020) (holding that the § 1 exemption applies to delivery providers that make last mile deliveries).

Defendants ask the Court to add a third step: determining whether Plaintiff has a "contract[] of employment" with Defendants. 9 U.S.C. § 1. The Court finds that he does.

"When Congress enacted the Arbitration Act in 1925, the term 'contracts of employment' referred to agreements to perform work." New Prime Inc., 586 U.S. at 121 (2019). The crux of Defendants' argument is that SCI is a third-party administrator that provides payment and other administrative services to Owner/Operators like Plaintiff. Thus, the "agreement to perform [delivery services]" is not between Plaintiff and SCI's clients, but rather between Plaintiff and third parties. Id. To support this, Defendants point to a provision in the SCI Agreement that reads: "this agreement is not a contract of employment and no delivery work is promised to Owner Operator by accepting SCI's services for his or her business."[7]

However, at bottom, the SCI Agreement is an agreement that SCI will disburse payments to Plaintiff upon completion of work—hence, an agreement to perform work.[8] Indeed, "Congress used the term 'contracts of employment' in a broad sense to capture any contract for the performance of *work* by *workers*." New Prime Inc., 586 U.S. at 116 (emphasis in original). Here, Plaintiff personally performed delivery services, distinguishing the SCI Agreement from a delivery service partnership contract between business entities. Contra Fli-Lo Falcon, 97 F.4th at 1201.

---

[7] SCI Agreement at 2.

[8] See SCI Agreement at 4 ("SCI's obligation to process a payment begins after Owner/Operator fulfills all of the items herein and payment is requested by a Logistics Broker."). As Plaintiff further points out, the SCI Agreement requires Plaintiff to maintain accident insurance, display relevant logos, and permit SCI to run background checks and drug tests. See generally id. These requirements indicate that, even if the actual work is funneled through a third party, the SCI Agreement is fundamentally an agreement by Plaintiff to perform satisfactory work in exchange for payment from SCI.

Rather, the more accurate characterization is that SCI, as a payment service provider, could not invoke the § 1 exemption against its clients, but Plaintiff, an independent contractor employed by SCI "playing a direct and necessary role in the free flow of goods across borders[,]" can. See id. (holding that a delivery service provider "*employee* may be a transportation worker playing a direct and necessary role in the free flow of goods across borders. But that cannot turn [the delivery service provider] into such a transportation worker.") (emphasis in original); Saxon, 596 U.S. at 458; see also Silva v. Schmidt Baking Distribution, LLC, 162 F.4th 354, 363 (2d Cir. 2025), cert. denied, 146 S. Ct. 2661 (2026) (holding that delivery drivers' contract with a distributor subsidiary constituted a "contract for employment" for purposes of § 1 exemption). In other words, Plaintiff performed delivery services—direct and necessary for the free flow of goods across borders—in exchange for SCI's payment and/or payment services. Thus, the Court finds that the SCI Agreement is a contract for employment for the purposes of the § 1 exemption, and the FAA does not govern the agreement.

Next, the Court turns to whether the arbitration clause is enforceable. In Nevada, "[i]t is well settled that the expressed intention of the parties as to the applicable law in the construction of a contract is controlling if the parties acted in good faith and not to evade the law of the real situs of the contract. Under choice-of-law principles, parties are permitted within broad limits to choose the law that will determine the validity and effect of their contract. The situs fixed by the agreement, however, must have a substantial relation with the transaction, and the agreement must not be contrary to the public policy of the forum." Ferdie Sievers & Lake Tahoe Land Co. v. Diversified Mortg. Invs., 95 Nev. 811, 815, 603 P.2d 270, 273 (Nev. 1979) (citations omitted).

Here, the SCI Agreement states: "This Agreement will be governed by the laws of the State of New York."[9] SCI's principal place of business is New York. Because the FAA does not apply, the Court finds that New York state law applies.[10] The New York Arbitration Act (N.Y. C.P.L.R.

---

[9] SCI Agreement at 6.

[10] The Court finds that the FAA does not preempt the New York Arbitration Act, as the latter promotes the same overarching goal of the FAA. See Smith Barney, Harris Upham & Co. v. Luckie, 85 N.Y.2d 193, 205–06, 647 N.E.2d 1308, 1315 (1995) (holding that the FAA did not preempt New York's arbitration law because "the FAA was modeled after New York's arbitration law. . . . Accordingly, no significant distinction can be drawn between the policies supporting the FAA and the arbitration provisions of the CPLR") (citations omitted); see also Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 476 (1989) ("There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their

§ 7500, *et seq*.) does not contain a transportation worker exemption equivalent to § 1 of the FAA. However, the party seeking to compel arbitration has the burden of proving the existence of a valid agreement to arbitrate by a preponderance of the evidence. See Knutson v. Sirius XM Radio Inc., 771 F.3d 559, 565 (9th Cir. 2014); Bridge Fund Cap. Corp. v. Fastbucks Franchise Corp., 622 F.3d 996, 1005 (9th Cir. 2010). Here, Defendants, as well as Plaintiff, have failed to brief this motion according to the correct principles of law—specifically, the Parties only discuss how Nevada law, not New York law, may or may not render the arbitration provision enforceable.[11] Thus, the Court finds that it must deny the motion without prejudice. Cf. Hellenic Petroleum LLC v. Elbow River Mktg. Ltd., No. 119CV00483LJOSKO, 2019 WL 3035530, at *1 (E.D. Cal. July 11, 2019) (dismissing without prejudice after finding that "neither party has briefed the motion to dismissal according to the correct principles of law"); Margolin v. Nat'l Ass'n of Immigr. Judges, 608 U.S. 339, 342 (2026) ("Because courts are 'essentially passive instruments of government,' we rely on the parties to 'frame the issues for decision' and decide 'only the questions presented.'") (citation omitted).

**B. Motion to Compel Arbitration – Principle**

First, as explained above, the Court finds that Plaintiff is exempt from the FAA under § 1. Next, Parties dispute whether Principle may enforce the SCI Agreement as a third-party beneficiary.[12] The Court similarly finds that this issue is governed by New York state law, which the Parties did not brief. Principle's Motion to Compel Arbitration is denied without prejudice.

**C. Motion for Leave to File Surreply**

Per this Court's local rules, "[s]urreplies are not permitted without leave of court; motions for leave to file a surreply are discouraged." LR 7-2. "Only the most exceptional or extraordinary circumstances warrant permitting a surreply to be filed." Dunlap v. Amato, No. 219CV189JCMPAL, 2019 WL 2866837, at *1 (D. Nev. July 3, 2019) (citation omitted). The Court

---

terms, of private agreements to arbitrate."); Palcko v. Airborne Express, Inc., 372 F.3d 588, 595–96 (3d Cir. 2004) ("There is no language in the FAA that explicitly preempts the enforcement of state arbitration statutes.").

[11] Parties only cite Nevada law in their briefing on the collective and class action waiver issue, so the Court declines to reach these arguments.

[12] To the extent that Principle argues that it has an independent arbitration agreement with Plaintiff, see Principle Agreement, that agreement also falls under the § 1 exemption of the FAA and is further unenforceable under Nevada law because it fails to include a specific authorization for arbitration. See NRS 597.995.

has provided the Parties with an opportunity for supplemental briefing on the § 1 issue, see ECF Nos. 32 – 34, and further found that the Parties have failed to brief all other issues under the correct state law. Defendants' reply in support of their motion to compel does not raise any *material* new evidence or issues that Plaintiff would need to address in a surreply. See Paxson v. Live Nation Ent., Inc., 778 F. Supp. 3d 1113, 1133 (D. Nev. 2025). Plaintiff's motion for leave to file surreply is denied.

## V. CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that Defendants SCI and Principle's Motion to Compel Arbitration, (ECF No. 10), is **DENIED WITHOUT PREJUDICE**. Defendants may file a new motion to compel arbitration discussing the validity of the arbitration agreement under New York law.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File Surreply (ECF No. 17) is **DENIED**.

**DATED:** September 29, 2026.

**RICHARD F. BOULWARE, II**
**UNITED STATES DISTRICT JUDGE**